IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BRETT CLANTON | ) | |
| | ) | |
| v. | ) | No. 3:22-0277 |
| | ) | |
| KILOLO KIJAKAZI | ) | |
| Commissioner of Social Security | ) | |

**To:** The Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's claim for Supplemental Security Income ("SSI"), as provided under Title XVI of the Social Security Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 18), to which Defendant has filed a response in opposition. (Docket No. 22.) Plaintiff has also filed a reply to Defendant's response. (Docket No. 23.) This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for initial consideration and a Report and Recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 18) be **DENIED**.

## I. INTRODUCTION

Plaintiff filed an application for SSI on January 31, 2019. (Transcript of the Administrative Record (Docket No. 13) at 132.)¹ He asserts that, as of the alleged disability onset date of December 13, 2018, he is unable to work because of heart problems and a shoulder injury. (AR 132, 153.)² Plaintiff's application was denied initially and upon reconsideration. (AR 132, 149.) Pursuant to his request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Angele Pietrangelo on April 19, 2021. (AR 92.) The ALJ denied the claim on May 4, 2021. (AR 70-72.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on March 7, 2022 (AR 1-4), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ's unfavorable decision included the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since January 31, 2019, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: coronary artery disease ("CAD")- status post myocardial infarction; hypertension; and a history of shoulder impingement (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1. (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as

---

¹ The Administrative Record will be referenced by the abbreviation "AR" followed by the corresponding black Bates-stamped numbers on the bottom right corner of each page.
² The Commissioner also identified concentration problems as part of the disability assessment. (AR 153.)

defined in 20 CFR 416.967(b) except he can occasionally lift and/or carry 20 pounds; and frequently 10 pounds. He can sit 6 out of 8 hours; and stand/walk 6 out of 8 hours. He can occasionally climb ramps/stairs; he can occasionally climb ladders, ropes and scaffolds; and frequently perform all other postural activities. He must avoid concentrated exposure to extreme temperatures, fumes, etc.

5. The claimant is unable to perform any past relevant work. (20 CFR 416.965).

6. The claimant was born on February 20, 1966, and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. The claimant subsequently changed age category to advanced age (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. The claimant has acquired work skills from past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 416.969(a) and 416.968(d)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 31, 2019, the date the application was filed (20 CFR 416.920(g)).

(AR 75-82.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (internal citations omitted). If substantial evidence supports the ALJ's decision, that decision will be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, the ALJ's decision must be affirmed if his or her "findings and inferences are reasonably drawn from the record or supported by substantial evidence even if that evidence could support a contrary decision." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010).

The Commissioner utilizes a five-step sequential evaluation process to determine whether a claimant is disabled and eligible for SSI. 20 C.F.R. § 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if, based on his residual functional capacity ("RFC"), he can perform past relevant work. *Id.* Fifth, if the claimant can adjust to other work

4

Case 3:22-cv-00277   Document 25   Filed 11/03/22   Page 4 of 13 PageID #: 1253

based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the Commissioner at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Jones v. Berryhill*, 392 F. Supp. 3d 831, 843 (M.D. Tenn. 2019) (citing *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). A reviewing court is not permitted to try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (citing *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

### B. The ALJ's Five -Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps but found at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that Plaintiff's RFC allowed him to perform a range of light work with express limitations to account for his severe impairments, and that considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AR 75-82.)

### C. Plaintiff's Assertion of Error

Plaintiff presents one assertion of error: that the ALJ failed to properly consider Plaintiff's shoulder condition when formulating the RFC. (Docket No. 19 at 2.) Based on this alleged error, Plaintiff requests that the Court reverse the Commissioner's decision and award benefits to

Plaintiff or, alternatively, remand the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for additional consideration. (*Id*. at 12-13.)

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

If the case contains an adequate record, "the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court addresses Plaintiff's assertion of error below.

### 1. The RFC.

Plaintiff's lone assertion is that the ALJ improperly omitted any restrictions relating to a past right shoulder injury from the RFC despite concluding that "history of shoulder impingement" represented a severe impairment at step two of the five-step evaluation. (AR 75.) Specifically, Plaintiff argues that while the ALJ stated that she had "incorporate[d] overhead reaching and push/pull limitations" into the RFC (AR 78), she failed to actually do so. According to Plaintiff, this omission represents reversible error.

Defendant acknowledges that the RFC formulation includes no explicit restrictions relating to Plaintiff's history of shoulder impingement but argues that the ALJ appropriately considered

the impairment in determining that Plaintiff's shoulder condition did not preclude the performance of work existing in significant numbers in the national economy. Defendant also contends that the testimony provided by a vocational expert during the administrative hearing indicates that inclusion of the restrictions in question would not have impacted the ALJ's step five finding, thus making the ALJ's error harmless.

The Court begins with a review of the limited evidence pertaining to Plaintiff's right shoulder condition, which stems from an injury he sustained in 2010. (AR 122, 889.) Plaintiff testified during the administrative hearing that, as of April 2021, he had not had any recent treatment for his shoulder, and that he was able to brush his teeth, write, and retrieve dishes from a cabinet with his right arm without issue. (AR 110-11.) In a function report completed as part of his disability application, Plaintiff listed "reaching" as an activity impacted by his condition (AR 283, 299), although Plaintiff identifies no medical records in which any problems with his shoulder were reported to a provider. Still, Plaintiff testified that he currently struggles to hold objects for long periods of time or engage in repetitive actions with his right shoulder, and that he has "lost some strength" due to the prior shoulder injury. (AR 111-12.)

Multiple medical opinions relating to Plaintiff's physical functional capacity are included in the administrative record. In May 2019, Dr. Lloyd Huang performed a consultative examination during which Plaintiff complained of pain in his shoulders. (AR 522.) Plaintiff exhibited a normal range of motion in Plaintiff's shoulders, although Dr. Huang noted "crepitus in abduction and both forward elevation." (AR 523.) Dr. Huang diagnosed Plaintiff with "rotator cuff disease" and opined that he would be able to reach overhead "occasionally," reach everywhere else

7

"frequently," push and pull with his right hand "occasionally," and push and pull with his left hand "frequently." (AR 516, 523.)[3]

During a subsequent consultative examination in January 2020, Dr. Carol Cistola documented a full range of motion in all of Plaintiff's joints. (AR 890-91.) Although she acknowledged Plaintiff's "past right shoulder pain," Dr. Cistola found no evidence of any joint redness, swelling, heat, or deformity. (AR 891.) She noted that Plaintiff had a normal active range of motion in both shoulders and possessed "full use of his hands for reaching, pulling, [and] pushing." (AR 892-93.)

Two non-examining physicians who reviewed Plaintiff's medical history – Drs. Carolyn Parrish and Ronald Addlestone – similarly found no physical limitations stemming from Plaintiff's prior shoulder injury. (AR 129, 146.) The physicians did recommend some exertional limitations: Dr. Parrish included a restriction to "occasional" lifting and/or carrying 50 pounds and "frequent" lifting and/or carrying 25 pounds, while Dr. Addlestone recommended "occasional" lifting and/or carrying just 20 pounds and "frequent" lifting and/or carrying 10 pounds. (AR 128, 144.)[4] However, they proposed no limitations with respect to pushing and/or pulling or reaching, and in fact opined that the 2010 shoulder injury did not rise to the level of a medically determinable impairment. (AR 128-29, 144-46.)

When evaluating medical opinions such as these, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five

---

[3] The medical source statement completed by Dr. Huang defines "occasionally" as up to 1/3 of an eight-hour workday, and "frequently" as between 1/3 and 2/3 of an eight-hour workday. (AR 514, 516.)

[4] The forms completed by Drs. Parrish and Addlestone define "occasional" as "cumulatively 1/3 or less of an 8 hour day," and "frequent" as "cumulatively more than 1/3 up to 2/3 of an 8 hour day." (AR 128, 144.)

8

categories that include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c) Here, the ALJ concluded that the opinions provided by Dr. Huang, Dr. Parrish, and Dr. Addlestone were not persuasive because they "placed the claimant at a range of medium exertion," which the ALJ found to be inconsistent with the overall medical evidence. (AR 80.) In contrast, the ALJ "generally accept[ed]" Dr. Cistola's opinion given its alleged consistency with records from treating providers. (AR 80.)

The ALJ also included the following detailed discussion of Plaintiff's right shoulder condition:

> The claimant has a history of right shoulder impingement as he alleged it causes him difficulty with lifting over 10 pounds or reaching up due to pulling on the shoulder. Notably, the undersigned did not find any complaints regarding his shoulder in the record, except for at the consultative exams. In other treating records from Nashville General Hospital, he reported a history of shoulder pain but nothing current. The only record regarding complaints of shoulder pain was in September 2020, when he reported that his chest pain sometimes radiated into his shoulder, mostly on waking in the morning, but was relieved by nitroglycerin. Notably, he lives with/cares for his mother, does the driving, cooking, and cleaning. He is able to do self-care, reach to upper cabinet and get a dish out; write with his right hand, and work cell phone with right hand. The undersigned did not find any current reports of limitations due to his shoulder. However, due to the findings regarding crepitus on movement of the right shoulder, *the undersigned incorporates overhead reaching and push/pull limitations*. There are no other opinions or assessments more restrictive than the residual functional capacity above. All of these factors ae consistent with the medical evidence of record.

(AR 78) (emphasis added.) Notwithstanding the italicized excerpt, the ALJ neglected to include any specific overhead reaching or pushing/pulling limitations in the RFC. The lone issue before the Court is whether this omission represents reversible error.

The ALJ relied on testimony from a vocational expert during the administrative hearing to assist in determining whether Plaintiff could perform work in the national economy despite his impairments, as was appropriate. *See Smith v. Halter*, 307 F.3d 377,

9

378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). The ALJ first asked the vocational expert whether there were jobs available to a hypothetical individual with the physical limitations that ultimately comprised the RFC, to which the vocational expert confirmed that there were significant jobs in the national economy that would be available to such an individual, including "garment [sorter]" (Dictional of Occupational Titles ("DOT") code number 222.687-014), "cashier" (DOT code number 211.462-010), "assembler" (DOT code number 706.684-042), and "companion" (DOT code number 309.677-010). (AR 114-16.) The ALJ then posed a second hypothetical question that added a limitation involving reaching and pushing/pulling:

> ALJ: In addition to the limitations that I described in the first hypothetical, if the individual were also limited to occasional overhead reaching with the right upper extremity and occasional pushing and pulling with the right upper extremity — that's the dominant upper extremity — would the jobs that you've identified still be available?
>
> VE: I believe so, Your Honor.

(AR 115.) The vocational expert later clarified that if the hypothetical individual were limited to occasional reaching in all directions, as opposed to just overhead reaching, the "companion" job would be eliminated but the other three positions would remain available. (AR 116-18.)

Based on these exchanges, the Court finds that the ALJ's failure to include explicit reaching, pulling, or pushing limitations in the formulated RFC does not constitute reversible error. The vocational expert's testimony makes clear that Plaintiff would still be

able to perform multiple types of jobs in the national economy even if he were limited to occasional overhead reaching and occasional pushing and pulling. Plaintiff claims that "we do not know what limitation for reaching, pulling, and pushing the ALJ intended," and "to infer what the ALJ intended would be speculative." (Docket No. 23 at 2.) In contrast, we *do* know that the opinion containing the most restrictive limitation with respect to reaching, pushing, and pulling – Dr. Huang's recommendation of occasional overhead reaching, frequent reaching in all other directions, and occasional pushing/pulling with the right hand – was found to be unpersuasive by the ALJ (AR 80), a finding that Plaintiff does not challenge in his brief. It is also known that even if Dr. Huang's proposed limitations had been incorporated into the RFC, Plaintiff would still not be precluded from performing work as a garment sorter, cashier, or assembler, which bolsters the ALJ's step five finding. (AR 81.)

Plaintiff attempts to overcome this finding by pointing to the ALJ's citation to "crepitus" when she suggested but did not formally adopt overhead reaching and pushing/pulling limitations (AR 78), which Plaintiff argues should have resulted in a "significant limitation" in overhead reaching and pushing/pulling. (Docket No. 19 at 12.) Yet the only reference to crepitus in the record comes from Dr. Huang's consultative examination, which, as discussed, did not yield findings that would have meaningfully altered the ALJ's step five finding even if they had been adopted. The Court therefore declines to reverse the ALJ's decision given that doing so would represent "an idle and useless formality." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007) (internal citations omitted).

11

An ALJ's decision is appropriately considered "determinative if there is such relevant evidence as a reasonable mind might accept as sufficient to support the ALJ's conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (quoting *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001)) (internal quotations omitted). Given the ALJ's extensive discussion regarding the current status of Plaintiff's shoulder condition, this is clearly not a case involving an ALJ's failure to evaluate an impairment when considering a claimant's overall functional capacity, which would represent reversible error. *See Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 679 (S.D. Ohio 2020) (noting that an ALJ does not commit error if she addresses all of a claimant's impairments in formulating the RFC) (internal citations omitted). Moreover, while the ALJ apparently omitted certain restrictions she intended to make part of the RFC, inclusion of such restrictions would not have resulted in a different step five finding and would not have produced a more favorable outcome for Plaintiff. Because an ALJ's conclusions must be affirmed if a mistake on which it is based constitutes only a harmless error, *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014), and because Plaintiff offers no other argument for reversal of the ALJ's determination, the Court concludes that substantial evidence supports the ALJ's decision. Plaintiff's assertion of error is therefore rejected.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 18) be DENIED and the Commissioner's decision be affirmed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within 14 days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge